

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 2, 1967

Honorable J. M. Falkner
Commissioner, Department of
  Banking
Austin, Texas

Dear Mr. Falkner:

Opinion No. M-82

Re: Whether the Sharpstown State
Bank of Houston has the authority
to purchase property, identified
on submitted map as Building "F".

In your letter to this office you have requested the opinion of the Attorney General as to whether the Sharpstown State Bank may, under the laws of Texas, purchase a building designated as Building "F" in the Sharpstown Shopping Center, Houston, Harris County, Texas.

Building "F", as shown on the submitted map, consists of one single integrated structure, a portion of which is ten (10) stories high and a portion of which is two (2) stories high. Under the facts submitted, the Sharpstown State Bank presently leases a portion of the ten (10) story part of the said building for space in which to conduct its banking operations, other sections of the ten (10) story portion being rented to commercial tenants. Furthermore, the two (2) story portion of the structure is also currently rented to commercial tenants.

Article 342-501, Vernon's Civil Statutes, provides, in part, that:

> "No state bank shall, without prior written
> consent of the Banking Commissioner, invest
> an amount in excess of fifty per cent (50%)
> of its capital and certified surplus in a
> domicile (including land and building) nor
> an amount in excess of fifteen per cent (15%)
> of its capital and certified surplus in its
> furniture and fixtures. . ."

From the facts submitted, this statute is not relevant, in that the Sharpstown State Bank would increase its capital and certified surplus in an amount equal to the cost of the new building, should such purchase be deemed lawful. We next turn to Article 342-502, Vernon's Civil Statutes, which provides, in part, that:

- 365 -

> "No state bank shall acquire real estate,
> other than its domicile, except in satis-
> faction or partial satisfaction of in-
> debtedness, or in the ordinary course of
> the collection of loans and other obli-
> gations owing the bank, or for the use of
> the bank and future expansion of its banking
> house . . ." (Emphasis Supplied)

In this regard, Judge Speer, in Law of Banks and Banking in Texas (1952), Section 102, characterizes the use of the bank building as follows:

> "Under the provisions of Article 3 of Chapter
> IX of the Banking Code it is the author's
> thought that some consideration should be
> given to the phrase in its own banking house.

> "While the Constitution and Code have taken
> meticulous care in order to prevent branch
> banking, and to confine the activities of
> banks to their own place of business and
> bank building, no attempt has been made to
> define the character of the building.

> "Obviously the bank may acquire and own a
> building of such architectural arrangement,
> and structural features, and of such proportions
> and space, as the board in its sound business
> discretion thinks advantageous, and appropriate-
> within the limitations of the investment pro-
> visions. It is not required that the building
> be not beyond the bank's actual floor space
> requirements - present or prospective. Sound
> business discretion might and often does call
> for rental space and building conveniences
> beyond present requirements.

> "The true test would seem to be that so long
> as there is architectural and substantial
> structural connection there is one banking
> house, and the various activities of the bank
> may be carried on in any room, or space what-
> soever as the board may authorize. Whether
> such structure crosses lot lines, or tunnels
> under, or spans over alley or street can make
> no difference. The building includes all of
> its parts.[1]

Honorable J. M. Falkner, page 3    (M-82)

> "A comparatively recent opinion of the Attorney
> General supports the text where a garage for
> parking and deposit windows, situated on a lot
> across the street from the main building is
> connected by tunnel.[2]"

---

1.  Op. Atty. General No. O-2691.  "If the property is being purchased by the bank for the good faith purpose of a banking house, the law is not concerned with the character of the building, its structural peculiarities, the number of stories, the number of separate rooms or offices, and the like; these are matters for the sound business discretion of the Board of Directors. It would be difficult to find a building which had not been built to specifications for a bank, that would in all respects be exactly fitted to the demands of a bank purchasing the same. Indeed it might be difficult to construct a building to specifications suited not only to the present needs but to the future needs of a bank undertaking to construct its own banking house.  In the present case the surplus room, stories, offices and the like, it appears, may be profitably rented by the bank.  We cannot close our eyes to the fact that in many instances - perhaps in most instances - our better banks occupy their own buildings consisting of several, sometimes many stories, and much, if not most of the floor space is not actually used by the bank in conducting its banking business but is rented out.  There can be no valid objection to this if the major good faith purpose of the acquisition or construction of the building be to provide a banking house for the institution."

2.  Op. Atty. General No. V-1046.  "The contemplated new structure, although to be erected across the street from the original 'banking house', will be physically joined thereto by a tunnel under the street, which you state will be suitable for passage back and forth.  It is evident that besides being joined physically, the new structure, including the passageway, will be in close proximity to the present building.  It will be used in connection with the original building and as a unit will be devoted to one general common purpose.  It is our opinion that the two structures will in reality be one and when used in the manner proposed will constitute the bank's 'banking house'.  To hold that said Article requires deposits to be made in a bank's original building, and not in an addition thereto would sacrifice the real spirit of the law to pure literalism."

Under the facts submitted, the entire building is tied together as a unit with all utilities, including gas, water, and electricity and air conditioning, being built into the entire structure which was constructed at the same time.

The legislative history of Article 342-501, shows that the Legislature did not intend by the word "domicile" to limit the premises which could be owned by a state bank merely to those premises which the bank itself occupies for quarters. Prior to 1925, Article 512, Revised Civil Statutes, prohibited state banks from investing more than fifty percent (50%) of their capital or surplus in a "banking house". Acts 1923, page 322. In 1925, wording of the Article was changed from "banking house" to "domicile". This change clearly showed that the Legislature contemplated that the domicile of the bank could include an area greater than that required to house the banking facilities themselves.

From the foregoing it may be clearly seen that Article 342-501 permits the acquisition by a bank of a domicile, but does not in any way attempt to limit the size of such structure to a building consisting solely of banking facilities. As pointed out in Attorney General's Opinion O-2691:

> ". . .In many instances - perhaps in most instances - our better banks occupy their own buildings consisting of several, sometimes many stories, and much, if not most of the floor space is not actually used by the bank in conducting its banking business but is rented out . . ."

There is no vertical limitation to a banking domicile. It would therefore be completely illogical to hold that a bank may acquire, as its domicile, excess vertical space but not acquire excess lateral space. A prohibition against the acquisition of the one would of a necessity extend to a prohibition of the acquiring of the other.

Therefore, it is the opinion of this office that the Sharpstown State Bank will be within legal limitations in purchasing the property identified on the submitted map as Building "F" in the Sharpstown Center, Houston, Harris County, Texas.

This opinion is necessarily limited to the factual situation presented to this office.

S U M M A R Y

The Sharpstown State Bank will be within
legal limitations in purchasing the pro-
perty identified as Building "F" in the
Sharpstown Center, Houston, Harris County,
Texas.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

CCM:lh

Prepared by Charles M. Bardwell
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
W. V. Geppert, Co-Chairman
Ralph Rash
Jack Sparks
W. O. Shultz
Houghton Brownlee

STAFF LEGAL ASSISTANT
A. J. Carubbi, Jr.